UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA           :
                                   :
        v.                         :    Case No. 2:08-CR-88
                                   :
SON DANG                           :

**OPINION and ORDER**

Pursuant to the Court's April 10, 2009 Order at the hearing on defendant Son Dang's initial Motion to Suppress (Doc. 26), Dang's Supplemental Motion to Suppress is currently before the Court (Doc. 50). Under *Franks v. Delaware*, 438 U.S. 154 (1978), Dang seeks an evidentiary hearing to determine whether critical facts were recklessly or intentionally omitted from the affidavit supporting the government's January 10, 2008 wiretap application to intercept communications on Dang's cell phone. Dang contends that the wiretap application lacked probable cause and did not meet the standard for necessity required by the statute regulating interceptions of wire communications, 18 U.S.C. § 2518.

**FACTUAL BACKGROUND**

This case stems from the investigation of an alleged marijuana trafficking conspiracy in the Burlington, Vermont area. In the course of its investigation, the government identified approximately twenty target subjects involved in activities in furtherance of the conspiracy in Vermont, New York and Canada. The investigation of Dang began in the fall of 2005 and continued

until early 2008. During that time, government agents observed suspicious drug-related activity at Dang's home and arrested two persons connected to Dang as they were crossing from Canada into the United States with illegal items; in one case, thirty-four pounds of marijuana, and in another, $345,000.00. In 2006, a confidential source told police officers that Dang was the source for a local marijuana distributor, and during the summer of 2007, law enforcement officers observed Dang exchanging bags suspected of containing marijuana with other members of the alleged conspiracy. In the fall of 2007, Dang made numerous calls to two co-conspirators; calls to one of the co-conspirators, William Trieb, Jr., were intercepted as a result of a wiretap on Trieb's phone.

Based on the evidence of Dang's involvement in the conspiracy, on January 10, 2008, the government sought and received permission to intercept communications on Dang's cell phone.

**DISCUSSION**

**I.** *Franks*

Dang argues that the government recklessly omitted critical facts in its application for a wiretap of Dang's cell phone. Specifically, Dang contends that the government collected no inculpatory evidence that Dang was involved in an ongoing conspiracy between August 3, 2007 and January 10, 2008, the date

2

on which the government sought the wiretap.  According to Dang,
between August 2007 and January 2008, surveillance, trash pulls,
and pre-January 2008 wiretap intercepts[1] do not demonstrate
Dang's participation in the ongoing conspiracy under
investigation.  As a result, Dang claims that he is entitled to a
*Franks* hearing.  *Franks* permits affidavits in support of search
warrants to be challenged in limited circumstances:

> There must be allegations of deliberate falsehood or of
> reckless disregard for the truth, and those allegations
> must be accompanied by an offer of proof.  They should
> point out specifically the portion of the warrant
> affidavit that is claimed to be false; and they should
> be accompanied by a statement of supporting reasons.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see also United
States v. Falso,* 544 F.3d 110, 125-26 (2d Cir. 2008)(outlining
*Franks* standard for testing the veracity of an affidavit).

Dang fails to meet the *Franks* standard for an evidentiary
hearing on this issue.  Dang characterizes the facts as
demonstrating that there is no inculpatory evidence against him
between August 3, 2007 and January 10, 2008, but this
interpretation is not supported by the evidence.  Between
November 8 and November 28, 2007, Dang made fifteen phone calls
to Trieb, a co-conspirator, regarding a drug debt related to the
objective of the marijuana distribution conspiracy being

---

[1] The government had placed wiretaps on two cell phones belonging
to co-conspirator Trieb.

investigated by the government. Dang also placed seventeen calls to co-conspirator Frank Nguyen between November 18 and December 9, 2007. *See* Affidavit of Adam T. Chetwynd ("Chetwynd Aff.") ¶¶ 55-62, 64. Viewing the evidence as a whole, given the time frame and breadth of this alleged international drug conspiracy, these phone calls during the fall of 2007 are consistent with Dang's continued involvement in the conspiracy. As opposed to an omission of critical facts requiring a *Franks* hearing, what Dang is really arguing here is that the wiretap application lacked probable cause because it was based on stale information, an argument that will be addressed below.

## II. Wiretap Applications

18 U.S.C. § 2518 sets forth the procedure for applying for and obtaining warrants for intercepting wire communications. A court may authorize a wiretap "if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap." *United States v. Yannotti*, 541 F.3d 112, 124 (2d Cir. 2008) (quotation omitted); *see also* 18 U.S.C. § 2518(1)(b) & (3). The court also must determine whether "normal

investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

**A. Probable Cause**

The standard for establishing probable cause for a wiretap warrant under 18 U.S.C. § 2518 is the same as for a search warrant. *United States v. Wagner,* 989 F.2d 69, 71 (2d Cir. 1993) (citations omitted). To evaluate whether an affidavit in support of a search warrant contains probable cause, courts employ a "totality of the circumstances" test: "[t]he issuing judicial officer must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. at 71-72 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

When evaluating the staleness of information presented in support of a search warrant, the age of the facts and the nature of the unlawful conduct alleged are two critical factors to consider. *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998). "[W]hen the supporting facts present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of

evidence becomes less significant." *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004) (quotations omitted). The passage of time is not controlling, but is one factor to consider, along with the length of criminal activity. *Id*. at 181-82 (finding probable cause for search warrant for records related to health care fraud scheme where more than twenty months passed between last described act and the search warrant).

The affidavit in support of the government's wiretap application alleges an ongoing conspiracy to distribute controlled substances and to launder the proceeds of narcotics trafficking. At the time the wiretap application was made, the government was aware of at least twenty target subjects involved in a marijuana distribution conspiracy that involved activities in Vermont, New York, and Canada. Chetwynd Aff. ¶¶ 3, 9-21, 47-64. DEA Burlington began investigating Dang's role in this conspiracy in 2005. In the fall of 2005, the DEA observed a vehicle at Dang's residence, and in January 2006, this same vehicle was stopped at the Highgate Springs, Vermont border and 34 pounds of marijuana were found in the gas tank. The driver of the car, Khoa Pham, admitted that he previously had smuggled marijuana and that an Asian male at the Casino de Montreal paid him to smuggle marijuana into Vermont. *Id*. ¶ 47.

Also in 2006, a confidential source told DEA and Essex police officers that a person known as "Lam" sold five pound

quantities of marijuana and that "Lam's" source was Dang. The confidential source told officers that "Lam" lived on Archibald Street in Burlington, Vermont. In July 2007, while executing a search warrant at 45 Archibald Street, the resident, Ivan Cruz, told officers that he purchased marijuana from "Lam," an Asian male who also lived on Archibald Street. Telephone and motor vehicle records confirmed that "Lam" is Frank Nguyen, and that Nguyen drives a black Acura TL. Nguyen is alleged to be a member of the conspiracy, along with Dang, that is the subject of the government's investigation. *Id*. ¶¶ 48-51.

Dang's activities have an international component as well. Dang has forty-four documented entries into the United States, most of them from Canada into Highgate Springs, Vermont, and the government suspects that Dang's source of supply is in Canada. *Id*. ¶¶ 71-72. On July 27, 2007, Immigration and Customs Enforcement officials at Rouses Point observed a vehicle attempting to re-enter Canada. A Canadian citizen, Steven Maigar, was hiding in the trunk of the car with approximately $345,000.00 cash. Maigar attempted to flee but was eventually caught and prosecuted for smuggling. In a search incident to Maigar's arrest, officers found a piece of paper with the name "Pho Dang" and the telephone number 655-0707; Pho Dang is a Vietnamese restaurant owned by Dang, with the same phone number. In addition, Maigar's cell phones showed calls to the Montreal,

Quebec number 514-813-8889, and Dang's cell phone records reflect fifty-five calls to that number between March 20 and July 26, 2007. *Id*. ¶¶ 52-53. During the summer of 2007, Dang was observed exchanging bags (suspected of containing controlled substances) with co-conspirator Trieb and other co-conspirators at Duncan's Auto in Burlington, Vermont. *Id*. ¶ 54.

Dang made numerous phone calls to Nguyen and Trieb in November 2007. Toll records reflect seventeen calls from Dang's telephone to Nguyen's between November 18 and December 9, 2007, and fifteen calls to Trieb's phone between November 8 and November 28, 2007. *Id*. ¶¶ 55-57, 59-62, 64. While Dang characterizes the calls between Dang and Trieb (whose cell phone was subject to a wiretap) as discussions over a past due debt, the calls appear to be related to a previous drug transaction, where Trieb offers to give Dang a Volvo car as payment for drugs that Dang provided Trieb.

Based on the totality of the circumstances, there was sufficient evidence to establish probable cause for the wiretap application on Dang's cell phone. The government's information indicated Dang's participation and/or connection to suspicious conduct related to marijuana distribution in Vermont and Canada over two years, from the fall of 2005 to the fall of 2007. Dang characterizes the period between August 3, 2007 and January 10, 2008 as a time when the government discovered no inculpatory

8

evidence against Dang, but Dang's phone calls to Nguyen and Trieb in November 2007 refute such a claim.  Given the nature of narcotics distribution conspiracies, the lack of inculpatory evidence against Dang during some periods of time in the fall of 2007 does not make the government's information stale.  *See Ortiz*, 143 F.3d at 732-33 (in narcotics investigations, weeks or months between last act described and warrant application did not make information stale; "'narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'") (quoting *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990)).  The government sufficiently established probable cause for the wiretap of Dang's cell phone.

**B.    Necessity**

To demonstrate that a wiretap is necessary does not require the government to exhaust all other possible means of investigation.  *See United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999); *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990).  "An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every other possible means of the investigation has not been exhausted." *United States v. Terry*, 702 F.2d 299, 310 (2d Cir. 1983).  Whether investigative procedures have been exhausted

9

"must be tested in a practical and common sense manner." *Diaz*, 176 F.3d at 111 (citation omitted).

Dang claims that the government's application failed to establish that other investigative procedures would not succeed. Specifically, Dang argues that the government has not shown whether cooperating co-conspirators could have been used to further the government's investigation of Dang. The government's application explains why using cooperating co-conspirators was unlikely to succeed in developing evidence against Dang, and the application provides detailed information about the investigative procedures that had been used to date as well as the possibility of success (or lack thereof) using other investigative techniques.

A practical and common sense reading of the government's application here demonstrates the need for the wiretap of Dang's cell phone. The application outlines in detail the government's evaluation of the efficacy of employing normal investigative procedures, such as undercover agents and confidential sources; physical surveillance; search warrants; pen register, trap and trace and toll information; and arrests of target subjects. In some cases, the government has used normal investigative techniques, such as confidential sources and arrests of co-conspirators, with some success, but as the government explains, the confidential sources are not sufficiently connected to those

"higher" up in the chain of distribution and arrests have yielded little to no information due to a lack of cooperation  *See* Chetwynd Aff. ¶¶ 67, 68.  The government also explains that it is unlikely to be able to successfully utilize undercover agents because it lacks any connection to an "insider" who can facilitate an introduction to other members of the group.  Nor is the government aware of the respective roles of all of the members of this distribution chain to allow an undercover agent to approach one or more individuals.  *Id*. ¶¶ 69-70.  Thus, contrary to Dang's contention that arrests of co-conspirators and those cooperating with the government could be successful, the information presented by the government fully describes why this approach would not yield results.

Similarly, the government discusses the drawbacks of other investigative techniques.  Physical surveillance was initially successful but became less so when the target subjects began employing counter-surveillance techniques that could have risked detection of the surveilling law enforcement officers.  In addition, while law enforcement officers learned that Dang had forty-four documented entries into the United States, mostly from Canada, this information does not necessarily reflect the total number of trips made outside the country.  *Id*. ¶ 72.  Combined with the information connecting Dang with Nguyen, who was caught with thirty-four pounds of marijuana returning from Canada into

the U.S., and with Maigar (the man found with $345,000.00 in cash in the trunk of a car that was attempting to return to Canada), this information is significant given the suspicion that Dang's supplier of marijuana was in Canada, and one of the investigation's objectives was to identify the source of Dang's supply. *Id*. ¶¶ 7, 83. The government's application demonstrated that it exhausted its ability to pursue its investigation of Dang's suspected Canadian supplier using traditional investigative techniques. *See also id.* ¶¶ 76-80 (describing risk and likelihood of failure using other procedures such as search warrants; grand jury subpoenas; pen registers, trap and trace and toll records; and arrests of target subjects).

Based on the information presented to the Court, the government established the necessity of obtaining a wiretap on Dang's phone in order to further its over two-year investigation into this international marijuana distribution organization. *See, e.g.*, *Torres*, 901 F.2d at 232 (finding wiretap necessary where affidavit in support of wiretap application described fourteen-month investigation into criminal organization and limitations of using alternative investigative methods).

**CONCLUSION**

For the reasons discussed above, Dang does not meet the standard for an evidentiary hearing under *Franks*, and the government demonstrated probable cause and necessity for a

12

wiretap of Dang's cell phone.  As a result, Dang's Supplemental Motion to Suppress (Doc. 50) is **denied**.

Dated at Burlington, Vermont this 30th day of June, 2009.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge
